RECEIVED
USDC, WESTERN DISTRICT OF LA
TONY R. MOORE, CLERK
ALEXANDRIA, LOUISIANA
DATE 3/3/11
BY ___

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| AMERICAN INTERNATIONAL SPECIALTY LINES, et al. | CIVIL CASE NO. 1:06-00600 |
| VERSUS | |
| GEORGE BLAKEMORE, et al. | MAGISTRATE JUDGE JAMES D. KIRK |

## RULING AND JUDGMENT

Before the court are competing motions for summary judgment regarding insurance coverage. One motion was filed by plaintiffs, Chartis Specialty Insurance Company, Insurance Office of America, LLC and Martin H. Jones, who contend coverage should be provided by First Financial Insurance Company ("FFIC") for the allegations made in the lawsuit as to Haynes Industries, LLC, Haynes Industries, HI Insulation, LLC, HI Insulation, Lee Haynes, Sr., Lee Haynes, Jr. and their employees (Doc. 147).[1]  The other motion was filed by First Financial Insurance Company ("FFIC") who contends coverage does not exist under the policy as to any of the properly named defendants in this action (Doc. 156). Both the plaintiffs and FFIC filed an opposition to the other's motion for summary judgment (Doc. 169 and 174, respectively). Thereafter, the undersigned sought additional briefs from both parties regarding the issue of reformation (R. 207) and each filed a supplemental memorandum and

---

[1] Though plaintiffs seek coverage for allegations made in the suit as to Haynes Industries, Haynes Industries is not named as a defendant in the lawsuit.



a reply brief (R. 210, 212, 215, 218).

Facts

This case revolves around property damage which occurred as a result of a fire in April 2005, at 400 Rifle Point Plantation in Ferriday, Louisiana.

The home at 400 Rifle Point Plantation is one of several structures located on a hunting and fishing ranch known as Rifle Point Plantation. The land and structures are owned by SRM Properties, LLC which was established by Paul Meng for the sole purpose of acting as Rifle Point Plantation's owner. The construction of the various structures took place in and around 2003 and SRM Properties, LLC, Scenic Homes, Inc. and M&R Equipment Company, Inc. were the general contractors. Paul Meng's brother, Jim Meng, oversaw the day to day construction of these homes.

In April of 2003, Jim Meng contacted "HI Insulation" and spoke to Lee Haynes, Jr. about performing the insulation work for the houses on Rifle Point Plantation. It is unknown as to the exact date the insulation work was performed at 400 Rifle Point Plantation, but insulation was installed in various structures in approximately April 2003 and September thru November 2003.

In April 2005, the structure located at 400 Rifle Point Plantation caught fire and sustained both fire and smoke damage.[2]

---

[2] Plaintiffs contend the fire was a result of insulation being installed too close to a hot water heater flue pipe.

2

The owner, SRM Properties, LLC, presented a claim to its insurer for damages, losses and other relief. A determination was made that the building and its contents were destroyed and, therefore, were totally useless.

Having paid for the fire damage pursuant to an insurance policy they issued, plaintiffs entered into an agreement with SRM Properties, LLC, Scenic Homes, Inc. and M&R Equipment Company, Inc. whereby the aforementioned entities fully and completely set over, transferred and assigned their claims, interests, privileges and rights for the prosecution and recovery of all damages, losses, costs, expenses and any other relief of any and every kind resulting from, in connection with or arising out of the fire to the plaintiffs.

On April 9, 2006, plaintiffs filed this suit against various defendants who performed work at 400 Rifle Point Plantation and who plaintiffs alleged caused the fire via defects in construction. The named defendants who remain in the case today are: 1) HI Insulation, LLC, 2) Lee Haynes, Jr. d/b/a HI Insulation, 3) Haynes Industries, LLC, 4) Lee Haynes, Sr. and 5) First Financial Insurance Company.

It is important for the reader to note that despite the fact Lee Haynes, Jr. d/b/a HI Insulation is a defendant named in this case, there is no evidence that HI Insulation ever operated as a d/b/a of Lee Haynes, Jr. It is also important to note that though

they are not named as defendants, other entities (or purported entities) which play a role in this case are Haynes Investments, LLC d/b/a HI Insulation and Haynes Industries. Haynes Investments, LLC was formed in 1998 and established HI Insulation as a d/b/a the following year. HI Insulation was operated this way until it formed an LLC in December 2004.

The facts of the case are confusing and complicated because of the similarity in names of both the entities and those who own them.[3] Lee Allen Haynes is the name of both the father and son who are alleged to own the company which performed the insulation work at 400 Rifle Point Plantation. There is no legal distinction between the father's and the son's names; however, for the sake of clarification, the father will be referred to as "Lee Haynes, Sr." and the son will be referred to as "Lee Haynes, Jr.".

Additional confusion lies in the names of the Haynes' companies. Lee Haynes, Sr. formed Haynes Investments, LLC and it operated HI Insulation as a d/b/a from 1999 through December of 2004. In August of 2003, Haynes Industries, LLC was established and its shareholders included Lee Haynes, Sr. and Lee Haynes, Jr.[4]

---

[3] By Lee Haynes, Sr.'s own admission, the confusion between entities was intended. (Doc. 156-6, p7).

[4] Though Lee Haynes, Sr. denied any ownership in Haynes Industries, LLC, the articles of incorporation provided by the Louisiana Secretary of State shows he held 90% of the stock and Lee Haynes, Jr. held the remaining 10% at the time of its formation.

It was not until December of 2004, long after the work that is subject of this case was performed, that HI Insulation itself became an LLC.

Lee Haynes, Sr. was responsible for seeking and obtaining insurance coverage for Haynes Investments, LLC d/b/a HI Insulation and in fact secured a commercial general liability ("CGL") policy for the policy period March 23, 2003 through March 23, 2004. The policy, which was placed through Strickland General Agency of La, Inc. was an FFIC occurrence policy and the named insured was Haynes Investments, LLC d/b/a HI Insulation.[5]

In May 2004, Lee Haynes, Jr. sought insurance for Haynes Industries, through his agent, Blumberg and Associates, Inc. The Commercial Insurance Application which sought insurance on behalf of Haynes Industries and was signed by Lee Haynes, Jr., indicated Haynes Industries was an individual business which performed insulation installation. The application read, "this is the son of another [i]nsulation company and he is going out on his own. He has 10 years experience." A Contractor Supplemental Application, dated the same date and arriving at Southern General Agency - South on the same day as the Commercial Insurance Application, sought coverage for HI Insulation. This application was completed and signed by Lee Haynes, Jr. and in it, he advised the company was in the insulation business for six years and was owned by two people.

---

[5] The broker was Employer's Insurance Representatives.

Based upon the aforementioned applications, FICC issued a Commercial General Liability policy for the policy period May 6, 2004 through May 6, 2005 which includes the dates of the occurrence of the fire in April 2005. The named insured as set forth in the Common Policy Declarations page was "Haynes Industries" and that name was amended by endorsement in July of 2004 to "Haynes Industries, HI Insulation Investments". The policy makes clear that the amendment to the named insured was effective May 6, 2004 and there was no change in the premium charged. Other than the commercial general application which lists Haynes Industries as the individual business enterprise for whom insurance was sought, no evidence either documentary or testimonial, exists to show that Haynes Industries ever existed. The record is entirely devoid of evidence that HI Insulation Investments was ever an entity and no argument to the contrary has been asserted.

### The Law of Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure was recently amended to provide "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[6]

---

[6] Rule 56 was amended effective December 1, 2011. The comments to the amendment indicate the intent was "to improve the procedures for presenting and deciding summary-judgment motions and to make procedures more consistent with those already used in most courts. The standard for granting summary judgment remains unchanged."

A dispute regarding a material fact is "genuine" "if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 587 (1986); Washbur v. Harvey, 504 F.3d 505, 508 (2007).

Additionally, Local Rule 56.2W provides that all material facts set forth in a statement of undisputed facts submitted by the moving party will be deemed admitted for purposes of a motion for summary judgment unless the opposing party controverts those facts by filing a short and concise statement of material facts as to which that party contends there exists a genuine issue to be tried.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim. See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. See Celotex, 477 U.S. at 324, 106 S.Ct. 2548. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue exists for trial. See id. at 325, 106 S.Ct. 2548;

Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir.1994); Austin v. Will-Burt Company, 361 F. 3d 862, (5th Cir. 2004). This burden is not satisfied with "some metaphysical doubt as to the material facts," by "conclusory allegations," by "unsubstantiated assertions," or by only a "scintilla" of evidence. Little, 37 F.3d at 1075.

All evidence must be considered, but the court does not make credibility determinations. If the movant fails to meet its initial burden, summary judgment should be denied. Id.

### Discussion

#### Coverage

Louisiana Civil Code article 2045 provides: "[i]nterpretation of a contract is the determination of the common intent of the parties." "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La.C.C. art. 2046. The contract must be "construed according to the entirety of its terms and conditions as set forth in the policy, and as amplified, extended, or modified by any rider, endorsement, or application attached to or made a part of the policy." LA.REV.STAT.ANN. §22:654 (2004). Whether the application is part of the insurance contract is determined by the parties' intent and the intent must be expressed on the face of the policy. Peterson v. Schimek, 729 So.2d 1024 (La. 1999). Failure to do so renders the application

and its representations to have no contractual force as they are not considered part of the contract.[7] Id.

If an insurance policy is found to be ambiguous after an examination of the policy as a whole, use of extrinsic evidence is proper. Fontenot v. Diamond B. Marine Services, Inc., 937 So.2d 425 (La.App. 4 Cir. 2006). Extrinsic evidence is also admissible to show mutual error even where the terms of the policy are not ambiguous. Samuels v. State Farm Mut. Auto. Ins., 939 So.2d 1235 (La. 2006).

As previously stated, the named insureds are "Haynes Industries, HI Insulation Investments". Lee Haynes, Jr. is designated as an individual on the Common Policy Declarations page. Under the section "Who is an Insured", it is clear that if you are designated as an individual in the Declarations, you and your spouse are insureds "but only with respect to the conduct of a business of which you are a sole owner." Additionally, "no person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations." Thus the policy makes it clear that, neither Haynes Investments, LLC nor Haynes Industries, LLC nor any person (Lee Haynes, Sr. or Lee Haynes, Jr.) or organization (HI Insulation) affiliated with

---

[7] The policy at issue fails to state that the application is made a part of the contract.

them is afforded coverage under the policy.[8] Further, Lee Haynes, Jr. is not an insured with respect to any of the conduct of either Haynes Investments, LLC nor Haynes Industries, LLC because he is not the sole owner of either corporation. Thus, coverage is not afforded for any of the named defendants.

The court recognizes that it is unlikely that Lee Haynes, Jr. intended to procure and pay for insurance on two non-existent businesses (neither Haynes Industries nor HI Insulation Investments ever existed or conducted business). However, it is unclear in this case which entity(s) Lee Haynes, Jr. sought to insure. Despite the fact this question of intent exists, it does preclude the court from determining coverage does not exist and granting FFIC's motion for summary judgment. Even if we knew the parties' intent, procedurally, the only means by which the error could be corrected is reformation and plaintiffs have no such right of action.

Reformation

Reformation of a contract is proper where the agent who issues the policy acts in a negligent, mistaken or fraudulent manner. Sherlock v. Ocean Salvage Corp., 785 So.2d 932 (La.App. 4 Cir. 2001), citing Hebert v. Breaux, 285 So.2d 829 (La.App. 1 Cir.

---

[8] It appears that the work was performed by HI Insulation as a d/b/a of either Haynes Investments, LLC or Haynes Industries, LLC but the determination of this issue is not necessary to decide whether or not summary judgment should be granted as to coverage.

1973). "If the agent knows the true intention of the policyholder as to the coverage desired, the insurance company is bound by the agent's knowledge, and the policy erroneously issued will be reformed so as to conform to the original intention." Hebert, 285 So.2d at 830, citing Maggio v. State Farm Mutual Automobile Ins. Co., 123 So.2d 901 (La.App. 1 Cir. 1960); Richard v. United States Fidelity and Guaranty Co., 175 So. 2d 277 (1965): Urania Lumber Co. v. Insurance Co. Of North America, 177 So.2d 640 (La.App. 3 Cir. 1965).

Plaintiffs cite several cases from the 1950s, 60s and 70s in support of their argument that they have standing to seek reformation of the policy at issue. For example, they cite Maggio v. State Farm Mut. Auto Ins. Co., 105 So.2d 505 (La.App. 1st Cir. 1958[9] for the proposition that the Louisiana Direct Action Statute allows an injured party to sue the insurer directly; thus providing the injured party with a right of action to seek reformation. Additionally, they cite Bonadona v. Guccione, 362 So.2d 740 (La. 1978) and Perry v. Law, 344 So.2d 523 (La.App. 1st Cir. 1976) in which the courts allowed an injured person to seek and ultimately obtain reformation of a contract to which they were not a party.

The court is not persuaded by these cases for several reasons. First, more recent case law does not allow for reformation unless

---

[9] Affirmed after remand by Maggio v. State Farm Mutual Automobile Ins. Co., 123 So.2d 901 (La.App. 1 Cir. 1960).

11

the party seeking reformation is an insured, a party to the contract or a third party beneficiary. See Gardner v. State Farm Mut. Auto. Ins. Co., 817 So.2d 398, 400 (La.App. 4 Cir. 2002) (a plaintiff who is neither an insured nor a party to the contract has no right of action for reformation); Haddad v. Elkhateeb, 46 So.3d 244 (La.App. 4th Cir. 2010) ("In Louisiana, a plaintiff may sue under an insurance policy when he is a named insured, additional insured, or third-party beneficiary of the contract...Under Louisiana law, "absent a contrary statutory provision, actions *ex contractu* cannot be maintained against a party by an individual who is not a party thereto." citing Randall v. Lloyds' Underwriter's at London, 602 So.2d 790, 791 (La.App. 4th Cir. 1992)). Second, the third party here is an insurance company who stands in the shoes of its insured (but not in the shoes of the insured in the policy sought to be reformed) in order to recoup losses it has already paid. It is not (as in the cited cases) an individual who was a victim of a tort and seeks damages. Third, none of the cases specifically address standing to seek reformation. Rather, the court either implied a right of action existed by allowing the case to proceed or it noted that there was no real issue but if there was, the Direct Action Statute should apply.[10]

As the plaintiffs are neither a party to the contract, an

---

[10] Maggio, a 1958 case, is the only Louisiana case which even mentions the Direct Action Statute as providing a third party a right of action to seek reformation.

12

insured nor a third party beneficiary, they lack standing to pursue reformation of the policy.[11] The court recognizes this decision is harsh because it is obvious that Lee Haynes, Jr. intended to insure an existing company(s) and FFIC received the benefit of premiums paid despite insuring two non-existent entities. Nevertheless, the result is, as explained above, mandated by the rules governing reformation of insurance contracts.

Duty to Defend

Neither Haynes Industries nor HI Insulation Investments performed the work at Rifle Point and neither are defendants named in this lawsuit. Thus, there is no duty to defend with respect to these insureds.

Though Lee Haynes, Jr., a properly named defendant, is considered an insured with respect to the conduct of a business of which he is the sole owner, there is no evidence that the conduct in question was performed by a business of which he is the sole owner. Thus, he is not entitled to a defense by FFIC to this lawsuit.

---

[11] If plaintiffs were deemed to have standing, a genuine issue of material fact regarding whether there was a mutual mistake would have to be resolved. The record is devoid of evidence as to which entity(s) Lee Haynes, Jr. intended to insure and what, if anything, Blumberg & Associates, Southern General Agency - South or FFIC knew regarding his intent. The reader should also be reminded that the plaintiff is not subrogated to the rights of the insured under the contract sought to be reformed.

Late Notice

FFIC argues coverage should not be afforded because it was not put on notice until two years after the lawsuit was filed. However, in light of the findings made above, there is no need to address this argument.

Alter Ego

Plaintiffs argue that Haynes Industries, LLC, Haynes Industries, HI Insulation, LLC and HI Insulation were alter egos of Lee Haynes, Sr. and Lee Haynes, Jr. Even if the argument is a valid one, it does nothing to establish coverage for any of the aforementioned entities, purported entities or individuals under the policy as it stands today. As stated several times, Haynes Industries and HI Insulation Investments never existed so they could not be an alter ego of anyone or anything. Further, neither Haynes Industries, LLC, HI Insulation, LLC nor HI Insulation are insureds under the policy as written so even if they are alter egos of the Haynes, coverage still would not be afforded.

Accordingly, in light of the foregoing

IT IS HEREBY ORDERED that FFIC's motion for summary judgment (Doc. 156 ) is GRANTED and plaintiffs' partial motion for summary judgment (Doc. 147 ) is DENIED.

THUS DONE AND SIGNED at Alexandria, Louisiana this 3rd day of March, 2011.

_____
JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE