RECEIVED
USDC, WESTERN DISTRICT OF LA
TONY R. MOORE, CLERK
DATE 9/28/12

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

AMERICAN INTERNATIONAL SPECIALTY
    LINES, et al.                   CIVIL CASE NO. 1:06-00600

VERSUS

                              MAGISTRATE JUDGE JAMES D. KIRK

GEORGE BLAKEMORE, et al.

## MEMORANDUM RULING

Before the court are two motions in limine. One motion was filed by defendants, Haynes Industries, LLC d/b/a HI Insulation ("HI Insulation") and Lee Haynes, Jr., on September 15, 2010 (Doc. 152). The other motion was filed by First Financial Insurance Company on September 16, 2010 (Doc. 154). In both motions, the defendants seek to exclude and/or limit the testimony and evidence of plaintiff's expert, Ted Kaplon, P.E. HI Insulation and Lee Haynes, Jr. also seek to exclude "other evidence at the trial that is purely speculative material" and evidence of alleged property damages.

### Law and Analysis

Federal Rule of Evidence 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the

witness has applied the principles and methods reliably to the facts of the case.

Expert testimony is admissible only if the proponent demonstrates that: (1) the expert is qualified; (2) the evidence is relevant to the suit; and (3) the evidence is reliable. <u>Watkins v. Telsmith, Inc.</u>, 121 F.3d 984, 988-89 (5th Cir. 1997). In <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579 (1993) the Supreme Court stated that trial courts should act as "gatekeepers" by making "preliminary assessment[s] of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." <u>Id.</u> at 592-93. By performing this function, the trial courts "ensure that any an all scientific testimony or evidence admitted is not only relevant, but reliable." <u>Id.</u> at 589. It is the party offering the expert testimony who has the responsibility of establishing, "by a preponderance of the evidence that the testimony is reliable." <u>Moore v. Ashland Chemical, Inc.</u> 151 F.3d 269, 276 (5th Cir. 1998), cert. denied, 526 U.S. 1064 (1999).

In <u>Kumho Tire Co. v. Carmichael</u>, 526 U.S. 137 (1999), the Supreme Court found the <u>Daubert</u> analysis[1] to be flexible and

---

[1] The <u>Daubert</u> analysis calls for trial courts to consider factors including, but not limited to, whether the expert's theory or techniques: (1) can or have been tested; (2) have been subjected to peer review and publication; (3) have a known or potential rate of error or standards controlling its operation; and (4) are generally accepted in the relevant scientific

stressed the "trial judge's general 'gatekeeping' obligation-applies not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge." Id. at 150. "The objective of that [gatekeeping] requirement is to insure the reliability and relevancy of expert testimony. It is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." Id. at 152.

Rimkus Consulting Group, Inc. was retained by Engle Martin & Associates (a loss adjusting and claims management firm) on June 8, 2005 to investigate the fire which occurred in April, 2005 at 400 Rifle Point Road, Ferriday, Louisiana ("the lodge"). Ted Kaplon, P.E. was assigned the claim and on June 9, 2005, he traveled to the lodge to perform an inspection and determine the cause and origin of the fire.

On June 28, 2005, Mr. Kaplon issued his report in which he stated the following opinions:

1. The fire originated in the basement above the gas-fired water heater and was **probably** caused by ignition of the spray polyurethane foam insulation by the normally operating water heater flue pipe.

2. Examination of the building's electrical system

---

community in order to determine reliability. Daubert, 509 U.S. at 593-94.

> revealed no evidence of any malfunction or defect or that it was the cause of the fire.

(Doc. 152-5, p. 1)(Emphasis added).

Thereafter, Mr. Kaplon explained what he viewed during his investigation and again reiterated,

> It is our opinion that the fire originated in the basement, at ceiling level, above the gas-fired water heater and was **probably** caused by ignition of sprayed polyurethane foam insulation by the normally operating water heater flue pipe. **Further investigation is required** to identify the specific installation requirements and fire safety requirements of this polyurethane foam.

(Doc. 152-5, p.2).

During his deposition, Mr. Kaplon acknowledged the aforementioned report was "preliminary" as he needed to obtain additional information. Though plaintiffs contend Mr. Kaplon in fact received information needed to draw a final conclusion, specifically, the installation requirements and/or fire safety requirements of the polyurethane foam at issue, Mr. Kaplon failed to issue either a completely new or a supplemental report which drew a final conclusion. Thus, the report before the court remains a preliminary report.

Additionally, while Mr. Kaplon may have obtained the specification sheet on the foam, there is no evidence he took any measurements or samples or conducted any experiments to determine the flammability of the foam insulation. He failed to advise at what temperature the foam would ignite nor whether the flue could

4

reach such a temperature.

Further undermining the reliability of the report is Mr. Kaplon's failure to properly follow is own fire investigation procedure. "[T]he normal part of a fire investigation is to eliminate other possible causes." (Doc. 152-5, p.40). Though Mr. Kaplon made diagrams of circuit breakers, checked wires and ultimately concluded the basement lights were not the cause of the fire, his conclusion was based upon an assumption which proved to be inaccurate. Mr. Kaplon found the smoke patterns on the light switch showed it was in the off position at the time of the fire. Thus, he assumed the lights were also off at the time of the fire and excluded them as a cause. What Mr. Kaplon failed to realize was the lights were controlled by a three way switch so the position of the light switch was not necessarily an indicator of whether the lights were off.

Mr. Kaplon also noted that there were fire damaged branch circuit conductors near the spot the fire originated and tripped breakers in the circuit breaker panels. Without further investigation, Mr. Kaplon assumed the two were connected and the breakers worked as they should. This assumption was made despite not knowing which breaker box was related to which branch circuit conductor and whether the tripped breakers were in fact related to the burned wires. Thus, the decision to exclude the he lights and electrical system as causes was based upon assumptions rathr than

5

facts.

Once Mr. Kaplon excluded the lights, electrical system and water heater as possible causes, he was left with only the foam insulation. Without knowing anything about the foam insulation, Mr. Kaplon stated the foam insulation was "probably" the cause of the fire. Mr. Kaplon never obtained a sample of the foam, determined the temperature at which the foam insulation begins to smolder and/or ignite or determined the flue could reach such a temperature. In fact, he failed to perform a single test or experiment or cite a single peer review article which supported his opinion that the foam insulation was probably the cause of the fire.

Because the opinion is not based upon reliable facts or scientific evidence nor is it conclusive, the report is deemed unreliable and inadmissible. So too is the testimony of Mr. Kaplon. Not because he lacks the credentials to qualify as an expert in determining the cause and origin of fires but because the report, upon which his entire testimony would be based, is flawed, incomplete and unreliable.

To the extent HI Insulation and Lee Haynes, Jr. seek to exclude "all other testimony, documents or other evidence", the motion is denied. HI Insulation and Lee Haynes, Jr. fail to specify a single witness, document or piece of evidence which they

seek to exclude.[2] To deem something inadmissible prior to knowing what it is and having an opportunity to examine it in the proper context would be error. Thus, the request is denied.

Finally, HI Insulation and Lee Haynes, Jr.'s argue the only evidence produced in support of damages is the deposition testimony of Paul Meng, owner of the property, and that figure is speculative. Plaintiffs cite numerous documents which they contend were both provided to defendants and are reliable evidence. Having received no opposition by HI Insulation and Lee Haynes, Jr., the request is denied.

Accordingly,

**IT IS HEREBY ORDERED** that First Financial Insurance, Co.'s motion in limine (Doc. 154) is **GRANTED**.

**IT IS FURTHER ORDERED** that HI Insulation and Lee Haynes, Jr.'s motion in limine (Doc. 152) is **GRANTED IN PART AND DENIED IN PART**. The motion to exclude the testimony and expert report of Ted Kaplon, P.E. is **GRANTED** but the motion to exclude all other evidence and motion to exclude testimony and evidence of damages are **DENIED**.

**THUS DONE AND SIGNED** in chambers at Alexandria, Louisiana this

---

[2] One can assume that some of the "other evidence" which defendants seek to exclude are photographs taken of the structure two months after the fire occurred. Though the photographs may show the origin of the fire, they certainly are not competent evidence of causation.

26th day of September, 2012.

```
_____
JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE
```